UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GERALDINE ANDERSON,<br><br>      Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,[1]<br><br>      Defendant. | No. CV-08-0186-CI<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS/ MOTION FOR SUMMARY JUDGMENT AND SETTING THE MATTER FOR BENCH TRIAL[2] |

Before the court is Defendant's Motion to Dismiss or Motion for Summary Judgment. (Ct. Rec. 21.) Geraldine Anderson (Plaintiff) is represented by attorney Scott Kane, Lacy & Kane, East Wenatchee, Washington; Defendant is represented by Assistant United States

---

[1] In her Complaint, Plaintiff improperly names the United States General Services Administration as Defendant. However, under the Federal Tort Claims Act (FTCA), the proper party in this action is the United States. 28 U.S.C. § 2679(a). Future pleading captions shall reflect the proper party.

[2] Although Plaintiff has demanded a jury trial in her Complaint, (Ct. Rec. 1), FTCA claims are tried to the court sitting without a jury. 28 U.S.C. § 2402; *Beins v. United States*, 695 F.2d 591, 597 n.7 (D.C. Cir. 1982).

ORDER DENYING DEFENDANT'S MOTION TO DISMISS/ MOTION FOR SUMMARY JUDGMENT AND SETTING THE MATTER FOR BENCH TRIAL - 1

Attorney Frank Wilson.  The parties have consented to proceed before a magistrate judge. (Ct. Rec. 10.)

**BACKGROUND**

Plaintiff, a 81 year old citizen of British Columbia, Canada, brings this action under the Federal Tort Claims Act (FTCA), and seeks to recover for injuries sustained in a fall at the United States Border Station in Oroville, Washington, (Border Station) on June 26, 2006. (Ct. Rec. 1.)  Plaintiff claims the Defendant did not meet its duty of care in maintaining the premises at the Border Station, and its negligence was the cause of her fall and injury. *Id*. at 2.  Specifically, she alleges Defendant failed to fix and maintain the carpet at the entryway to the Border Station bus lobby, even though the Border Station employees had reported the ill-fitting carpet in the entryway was causing a trip hazard.  She claims because of the Defendant's negligence, she tripped and fell after getting off the bus from Canada, and suffered injury.  She and her friends travel to Oroville regularly to go to the casino. After her trip and fall, she declined medical care, went on to the casino and traveled back to Canada the same day on the bus. (Ct. Rec. 34, Ex. I.)

In support of her claim, Plaintiff presents deposition evidence from her own deposition, and Border Station employees, and other passengers who saw her fall.  She also submits a letter from her Canadian counsel which sets forth damages and her statement of the incident, and a report from an engineering expert opining that the mat as installed was a hazard. (Ct. Rec. 33, 34.)

Defendant moves for dismissal for lack of subject-matter

ORDER DENYING DEFENDANT'S MOTION TO DISMISS/ MOTION FOR SUMMARY JUDGMENT AND SETTING THE MATTER FOR BENCH TRIAL - 2

jurisdiction and failure to state a claim under the FTCA. (Ct. Rec. 22 at 2). Defendant argues the "independent Contractor exception" to the FTCA bars Plaintiff's claims. *Id*. at 4. Specifically, Defendant asserts dismissal is proper because the maintenance of the Border Station, including the bus lobby, is contracted out, and the employees of the contractors are not federal employees. *Id*. at 5. According to Defendant, under the FTCA, the U.S. government is not vicariously liable for negligent maintenance of the bus lobby carpet by the independent contractor. *Id*.; 28 U.S.C. § 2671.

In the alternative, Defendant denies negligence and moves for summary judgment, asserting that Plaintiff has identified no genuine issues of material fact or evidence to establish that: (1) Defendant breached its duty of care in maintaining the Border Station; (2) the carpet condition was an "unreasonable risk of harm"; and (3) the carpet caused her to trip and fall. *Id*. at 3-4. In sum, Defendant denies negligence, and if there were negligence, asserts no employee of the United States was responsible. *Id.* at 5.

**FACTS**

Based on the respective statements of facts submitted by Defendant and Plaintiff, the following material facts appear to be undisputed, unless otherwise noted:

The U.S. General Services Administration (GSA) owns the building in which the Border Station is located and leases it to the U.S. Customs and Border Protection, Department of Homeland Security. During 2005 and including June 25, 2006, CMC, Inc. and Northern Management, Inc. were the independent contractors responsible for the janitorial, custodial, and mechanical maintenance of the Border

ORDER DENYING DEFENDANT'S MOTION TO DISMISS/ MOTION FOR SUMMARY JUDGMENT AND SETTING THE MATTER FOR BENCH TRIAL - 3

1  Station.  The contractors used their own supplies and equipment, did
2  the sweeping, mat and carpet cleaning, and decided what type of
3  floor mat to use and where to use them.  (Defendant's Statement of
4  Material Facts ¶ 1; *see also id.,* Ex. A, Decl. of David Lutz,
5  (Assistant Property Manager Oroville Border Station and GSA
6  employee).  GSA did not have day-to-day supervision over the CMC
7  employees.  *Id.*

8  In 2003, the Border Station bus lobby was tiled with a recessed
9  area left untiled for placement of a mat at the entry way.  The
10 original cocoa fiber mat used at the entry way was replaced sometime
11 before April 1, 2006, with a plywood sheeting underlay and black
12 nylon plastic mat.  The parties dispute why the mat was replaced.
13 Defendant states it is because the original cocoa fiber mat smelled
14 bad and was a fire hazard.  *Id*. at ¶¶ 2.  Plaintiff, citing
15 deposition testimony of Border Officers Dan Horsman and Chris
16 Karabinas, asserts the mat was replaced because the former mat was
17 a "trip hazard." Id. *(*Ct. Rec. 30 at 8-9; Ct. Rec 34, Ex. B at 46-
18 48, and Ex. C at 38, 42, 55-56; Ct. Rec. 48, ¶ 2.)

19 If a building tenant at the Border Station had an issue with
20 maintenance of the building, they would call or email the 24-hour
21 InfoCenter Service Desk to report it.  GSA kept electronic records
22 of calls/emails to the InfoCenter Service desk.  These records
23 documented of complaints and work requests, the nature of the issue,
24 the person calling, and the person responding.  There were work
25 order details concerning the bus lobby entrance recessed mat area on
26 December 7, 2005, and on June 26, 2006.  (Defendant's Statement of
27 Material Facts, ¶ 3-4.)  The December 7, 2005, record indicates "the

28

ORDER DENYING DEFENDANT'S MOTION TO DISMISS/ MOTION FOR SUMMARY
JUDGMENT AND SETTING THE MATTER FOR BENCH TRIAL - 4

door mat as you enter the building is too thin.  The indentation in the tile is longer than the mat and people are tripping on the lip."  The June 26, 2006, record concerns Plaintiff's fall: "They have a tile that lifts up right inside the door to the checking area.  It is a trip hazard, and someone fell yesterday.  Please check on it ASAP."  Defendant's Statement of Material Facts, Ex. C at 45 and 51.  There is a dispute regarding the number and type of complaints made to GSA about a trip hazard in the bus lobby.  (Ct. Rec. 48, ¶ 3.)

   No GSA employees were working at the Border Station on June 26, 2006.  Defendant's Statement of Material Facts ¶ 6.  Plaintiff objects to the admissibility and relevance of this fact, but does not controvert it.  Recessed entry mats are used in other ports of entry.  Plaintiff objects to admissibility and relevance of this fact, but does not controvert it.  Between January 2003 and June 25, 2006, about 70,000 bus passengers walked through the Border Station bus lobby entrance.  More than 42,000 were 60 years or older.  (Defendant's Statement of Material Facts ¶ 8, Ex. D, Decl. of Jina Nelson, ¶¶ 2 and 3.)  Plaintiff objects to admissibility and relevance of this fact, but does not controvert it.  Between April 2003 and June 25, 2006, Plaintiff entered the Border Station bus lobby about 25 times.  (Defendant's Statement of Material Facts, ¶ 9; Ex. E, Decl. of Eric Wilson, ¶¶ 1 and 2; Ex. F, Plaintiff's Answer to Interrogatory No. 11.)  Plaintiff does not controvert, but objects to this fact on the basis of relevance and lack of personal knowledge and hearsay.

   On June 25, 2006, Plaintiff, 79 years old at the time and living in Kelowna, B.C., got up at 6:00 a.m., took her medication,

ate, dressed, and drove to the Mall where she boarded the bus to the casino in Omak, Washington.  *(*Defendant's Statement of Material Facts*,* ¶ 10; Ex. F,  *Plaintiff's Answer to Interrogatory* No. 9.) Plaintiff does not controvert, but objets due to lack of relevance. (Ct. Rec. 48 at 8.)  The bus arrived at the Border Station at 10:45 a.m. on a warm, dry day.  The normal routine is for the bus driver to check with the customs officials before the passengers leave the bus and enter the bus lobby.  There are about 50 passengers who exit the bus and enter the bus lobby entrance through a glass door, which is pulled open from the right on approach.  Defendant's Statement of Material Facts*,* ¶ 11; Ex. G, Deposition of Emily Potts at 13-15.) Plaintiff does not controvert, but objects due to lack of relevance. (Ct. Rec. 48 at 8.)

There is significant dispute regarding what caused Plaintiff's fall. (Defendant's Statement of Material Facts, ¶ 12, 13; Ct. Rec. 48 at 8-13.)  Both parties submit evidence in the form of depositions and interrogatories of witnesses to the accident. Plaintiff suffered a bump on her forehead and pain in her shoulder, arm and hip.  She did not want to go to the hospital; she re-boarded the bus, went to the bingo palace for the day, and returned to her home around 10:30 p.m.  (Defendant's Statement of Material Facts, ¶ 15; Ex. F, Plaintiff's Answer to Interrogatory No. 10 (I) and (j).) On the day of the accident, Daniel Horsman, Supervisor U.S. Customs and  Border Protection, wrote a memo to GSA telling them of Plaintiff's fall and "the trip hazard that had been previously reported to the GSA Facilities Services call number when a previous bus passenger fell."  Defendant's Statement of Material Facts,¶ 16;

ORDER DENYING DEFENDANT'S MOTION TO DISMISS/ MOTION FOR SUMMARY JUDGMENT AND SETTING THE MATTER FOR BENCH TRIAL - 6

1  Ex. L, Deposition of Daniel J. Horsman, at 23-32, 40-44, 60-63.)

**DISCUSSION**

**A.  Motion to Dismiss- FTCA Independent Contractor Exception**

Defendant first moves for dismissal under FED. R. CIV. P. 12(b)(1) for lack of subject-matter jurisdiction, and 12(b)(6) for failure to state a claim under the FTCA.  It argues the "independent contractor" exception to the FTCA applies in this case; therefore, the court does not have jurisdiction.  Defendant also argues Plaintiff can prove no facts to establish negligence.

In considering a motion to dismiss under FED. R. CIV. P. 12(b)(1), the court may evaluate evidence to determine if it has jurisdiction; however, where the jurisdictional issue is dependent on factual issues going to the merits, the court employs the standard applicable to a motion for summary judgment.  *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005).  Further, in considering a motion to dismiss, "All allegations of material fact in the complaint are taken as true and are construed in the light most favorable to [plaintiff]."  *Pillsbury, Madison and Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994).  A dismissal for failure to state a claim is proper only if it is clear beyond a doubt plaintiff could prove no set of facts that would entitle him or her to relief.  *Id.*; *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

The FTCA is a partial waiver of sovereign immunity making the United States liable for torts of federal employees acting within the scope of their employment.  *Autery*, 424 F.3d at 956.  However, the United States is not liable for negligent acts or omissions of

ORDER DENYING DEFENDANT'S MOTION TO DISMISS/ MOTION FOR SUMMARY JUDGMENT AND SETTING THE MATTER FOR BENCH TRIAL - 7

its contractors. 28 U.S.C. § 2671 (the independent-contractor exception). "Federal law determines whether an individual is a federal employee." *Autery*, 424 F.3d at 957. "The critical element in distinguishing a [federal] agency from a contractor is the Government's power 'to control the detailed physical performance of the contractor.'" *United States v. Orleans*, 425 U.S. 807, 808 (1976) (quoting *Logue v. United States*, 412 U.S. 521, 528 (1973). Therefore, to invoke the independent contractor exception, Defendant must show the daily operations of a federal agency, are controlled by the contractor. *Id.* Although Defendant claims it does not have day-to-day supervision of the cleaning and maintenance of the Border Station, the evidence viewed in a light most favorable to Plaintiff shows that GSA has a formal procedure for reporting complaints and safety issues at the Border Station through a 24-hour InfoService call center, and once a complaint or issue is reported, GSA authorizes a work order to address the issue. (Ct. Rec. 23 at 2; Ex. A, Decl. of David Lutz ¶ 10.) The evidence also shows that Border Station employees, including members of the agency Safety Committee (specifically Border Officers Horsman and Karabinas) had knowledge of the ill-fitting mat in the entry way and were advised by other Border Station employees that it presented a hazard. (Ct. Rec. 34, Ex. B (Deposition of Karabinas) at 20.) Further, the evidence shows that GSA was informed of problems with the entry way mat by Officer Horsman on December 7, 2005. (Ct. Rec. 25, Ex. C (Service Request Detail) at 57.) This indicates a degree of supervision and control over safety issues by GSA and arguably defeats the relied upon independent contractor exception. Further,

ORDER DENYING DEFENDANT'S MOTION TO DISMISS/ MOTION FOR SUMMARY
JUDGMENT AND SETTING THE MATTER FOR BENCH TRIAL - 8

Defendant does not provide evidence of the contractual duties of its contractor that establishes the contractor's duty to repair reported hazards or safety issues.

The evidence, viewed in the light most favorable to Plaintiff, does not establish as a matter of law that the independent contractor exception applies in this case. Further, the jurisdictional issue is intricately entwined with the facts going to the merits. Plaintiff's evidence raises a genuine issue of material fact regarding the degree of direct supervision over safety issues, and the resulting applicability of the independent contractor exception. Therefore, dismissal for lack of jurisdiction without a trial is not appropriate. Since the parties have submitted considerable evidence beyond the Complaint for the court to consider in its determination, the matter should be treated as a motion for summary judgment. *Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007).

**B.  Motion for Summary Judgment - Negligence/Landowner Breach of Duty**

Summary judgment allows the parties to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Depart. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment shall be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir. 1978). Under FED. R. CIV. P. 56, a party is entitled to summary judgment where the documentary evidence produced by the

parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Semegen v. Weidner*, 780 F.2d 727, 732 (9th Cir. 1985). The moving party bears the initial burden of informing the court of the basis of its motion and identifying evidence of record it believes demonstrates the absence of "a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Rule 56 does not require "the moving party to support its motion with affidavits or other documents *negating* the opponent's claim." *Id.* If the moving party satisfies its initial burden, Rule 56(e) requires the party opposing the motion to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11(1986).

An opponent cannot rest on denials or mere allegations unsupported by factual data or in a pleading. *Id.*; *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989). Further, only disputes over facts that might affect the outcome of the case under the applicable law will preclude entry of summary judgment. Factual disputes that are irrelevant will not be counted. *Anderson,* 477 U.S. at 250. In determining if summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Id.*, at 255. Summary judgment is to be granted only where the evidence is such that no reasonable finder of fact could find for the non-moving party. *Id.,* at 250. Conversely, any doubt about the existence of any issue of material fact requires denial of the motion. *Id.* at 255

Under the FTCA, this tort action is governed by the law of

Washington, where the injury occurred. *Kangley v. United States of America*, 788 F.2d 533, 534 (1986). To prevail in an action for negligence under Washington law, a plaintiff must prove: the existence of a duty of care; a breach of this duty; injury of the plaintiff; and that a breach of the duty was the proximate cause of the injury. *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48 (1996). Landowner liability for injuries caused by an unsafe condition attaches only if the owner knows, or should know by the exercise of reasonable care, that a dangerous situation or unreasonable risk exists. *Kangley*, 788 F.2d at 534; *Iwai v. State*, 129 Wn.2d 84, 96-97 (1996); *Tincani v. Inland Empire Zoological Soc.*, 124 Wn.2d 121, 139 (1994). The phrase "reasonable care" imposes on the landowner the duty to inspect for dangerous conditions, "followed by such repair, safeguards or warning as may be reasonably necessary for [the invitee's] protection under the circumstances." *Tincani*, 124 Wn.2d at 139 (*quoting* the *Restatement of Torts* § 343, comment b.)

Recognizing the court may consider evidence submitted and treat the motion as one for summary judgment, Defendant sets forth its Statement of Material Facts (Ct. Rec. 23) and argues Plaintiff produces no evidence to establish a duty, a breach of duty, or that an unreasonable risk of harm or dangerous condition existed when she fell. (Ct. Rec. 22 at 7-8.) Defendant also argues the evidence does not show GSA knew or should have known the mats in the recessed area presented an unreasonable risk of harm. Rather, it argues, 70,000 visitors walked through the bus lobby without accident for two and one half years before Plaintiff's accident. (Ct. Rec. 23 at

8.) Defendant further asserts that Plaintiff cannot present testimony from anyone who saw what caused Plaintiff to fall. *Id.*

Plaintiff responds that the evidence, viewed in a light most favorable to her, raises issues regarding not only the unreasonable risk of harm, but the fact that GSA had actual and constructive knowledge of the risk and had made several attempts to fix the problem which was brought to their attention before Plaintiff's accident by Border Officer and Safety Committee member Trinity Street and Border Officer Chris Karabinas. (Ct. Rec. 30 at 6, 8, 9, 11.) This evidence conflicts with the Declaration of David Lutz, in which he states "no one ever complained to me, verbally or otherwise, about a tripping problem in the bus lobby entrance." (Defendant's Statement of Material Facts, Decl. of David Lutz at 4.) Plaintiff also provides evidence from witnesses who saw Plaintiff fall and attributed it to the condition of the entry way. (Ct. Rec. 30 at 5-7.) This evidence goes to the elements of the claim and contradicts Defendant's version of the material facts.

Viewing the evidence in the light most favorable to Plaintiff, it cannot be said there are no set of facts she can prove that would entitle her to relief. Where, as here, material facts are disputed and "leave room for a reasonable difference of opinion," the issues of "unreasonable risk of harm" and Defendant's knowledge of the risk are questions for the finder of fact. *In re Software Toolworks, Inc*. 50 F.3d 615, 621 (9th Cir. 1994); *See also, McMillan v. United States*, 112 F.3d 1040, 1044 (9th Cir. 1997); *Will v. United States*, 60 F.3d 656, 659-70 (9th Cir. 1995). These factual disputes are material and preclude summary judgment. Accordingly,

ORDER DENYING DEFENDANT'S MOTION TO DISMISS/ MOTION FOR SUMMARY JUDGMENT AND SETTING THE MATTER FOR BENCH TRIAL - 12

**IT IS ORDERED:**

1. Defendant's Motion to Dismiss or Motion for Summary Judgment (**Ct. Rec. 21**) is **DENIED;**

2. The matter is set for a four-day bench trial in Spokane, Washington, with the undersigned on **February 1, 2010**, commencing at **9:00 a.m.** A telephonic pretrial conference is scheduled for **January 6, 2010,** at 10:20 a.m.

3. The parties shall confer no later than **December 22, 2009,** prior to the pretrial conference, and a joint pretrial order shall be filed no later than **December 29, 2009,** before the pretrial conference.

5. The parties shall notify the court immediately if there is an agreement to mediate.

The District Court Executive is directed to amend the caption to reflect that the United States of America is the Defendant, file this Order and provide copies to counsel for Plaintiff and Defendant.

DATED December 2, 2009.


                     S/ CYNTHIA IMBROGNO
                UNITED STATES MAGISTRATE JUDGE

ORDER DENYING DEFENDANT'S MOTION TO DISMISS/ MOTION FOR SUMMARY JUDGMENT AND SETTING THE MATTER FOR BENCH TRIAL - 13